UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

YEKITA C. DIGGS,

      Plaintiff,

  v.

PRIME LENDING & CENLAR,

      Defendants.

Case No. 3:24-cv-2429-JPG

**MEMORANDUM AND ORDER**

      This matter comes before the Court on a motion to proceed in forma pauperis ("IFP"). (Doc. 8), following an order to show cause. (Doc. 6). The Plaintiff filed his motion on November 26, 2024. The Plaintiff has petitioned to quiet title to a property. The Plaintiff is suing two different Defendants that, according to the Plaintiff, are incorporated and have their principal place of business in a state other than Illinois. The Plaintiff is seeking recovery of $100 million. While the case meets the requirements of diversity, the Court identified several jurisdictional defects and allowed the Plaintiff until December 3, 2024, to correct those defects. The Plaintiff has failed to do so.

      The Plaintiff filed a supplement, however the filing is a largely nonsensical composition of various webpages and documents, most of which have no relevance to his alleged claims. (Doc. 15). Even the possibly relevant documents—a quit claim deed and a power of attorney appointing the Plaintiff as an agent—do not cure the various errors still present in the Plaintiff's case.

      In fact, if anything, the quit claim deed and power of attorney together raise serious questions as to the validity of the Plaintiff's appointment as an agent and the efficacy of his

1

actions. On the *very same day* that the Plaintiff was appointed through power of attorney, the principal filed a quit claim deed that transferred real property of 1.28 acres, assessed at nearly $60,000, to the Plaintiff, "for and in consideration of" $10. (Doc. 15). *See St. Clair County Property Tax Inquiry*, ST. CLAIR CTY. (last visited Dec. 10, 2024) https://stclairil.devnetwedge.com/parcel/view/07100408057/2023. Sham consideration is not consideration. Together these documents raise serious concerns as to the propriety of the Plaintiff's actions and prompt serious questions as to whether there was some manner of undue influence involved.

Setting that issue aside, the Plaintiff has also failed to pay the filing fee and moves to proceed IFP. To qualify for IFP, the Plaintiff must show that he is indigent and that his claims are not clearly frivolous. Failure to plead a plausible or intelligible claim is fatal for an IFP motion even if the petitioner can establish his or her indigence.

Here, the Court need not assess whether the Plaintiff is indigent because his lawsuit fails the second prong of the IFP inquiry—his claims are clearly frivolous. It appears that the Plaintiff secured a loan or mortgage of some kind from the Defendants, the Defendants foreclosed, and then sold the property. The Plaintiff seeks recovery of $100 million in addition to compensatory and punitive damages paid in "actual funds" and not in "'fountain pen money' or any other non-liquid form of payment." (Doc. 3).

There are a multitude of issues with the Plaintiff's case that renders it meritless. Not only does the Plaintiff cite irrelevant case law—some of which does not actually exist—the Plaintiff cites the UCC when real property transactions and loan agreements for property are governed by the common law. If the Plaintiff was entitled to recovery, there is no reason why the Plaintiff would be entitled to recover $100 million. The Plaintiff argues that the property at controversy

was unjustly foreclosed on and sold. The Court has taken judicial notice of public records that indicate the assessed value of the property is no more than $60,000—less than the $75,000 required to meet the threshold for diversity jurisdiction, and certainly less than $100 million.

Presuming *arguendo* that the amount in controversy is above the threshold for diversity, the Plaintiff argues that specific language in the contract rendered it void and, consequently, the Defendants had no right to foreclose on or sell the property. Even if the Plaintiff can show the mortgage was faulty, he is not entitled to the remedy he seeks—not $100 million or even $60,000 for that matter. There are only three possible remedies available here: recission, restitution, and reformation. Reformation would place the Plaintiff in the same position he is in now. The same is true for Restitution. Thus, the only other possible remedy he could seek would be recission.

However, even if the contract were rescinded, a transaction still took place—the Plaintiff solicited and accepted the Defendants' loan. Consequently, even if the Court granted recission of the contract, any judgment would seek to restore the parties to the state they were prior to the formation of the contract—meaning the Plaintiff would be required to pay back the Defendants for the amount he borrowed. Under no circumstance would the Plaintiff be entitled to the loan amount free of charge, and there is certainly no circumstance where the Plaintiff would be entitled to $100 million.

The Plaintiff disputes that any debt exists and demands that the Defendants produce proof of these debts, however, the very fact that the Defendants provided these funds to the Plaintiff is enough to establish a debt. Loan servicers and mortgagees are businesses, not charitable organizations; no reasonable person would expect a loan servicer or mortgagee to pay tens of thousands of dollars with zero expectation of being paid back.

For a multitude of reasons, the Plaintiff's claims are meritless.

Additionally, the Plaintiff does not state the dollar amount of the mortgage. Foreclosure extinguishes a mortgage, even if the amount recovered from the foreclosure sale is less than the remainder of the loan. As the Plaintiff's property was foreclosed on, his debt to the Defendants has been satisfied. However, rescinding the contract would mean the Plaintiff would be liable for the entirety of the loan, subtracting the value of the property at foreclosure. In effect, recission would revive the mortgage as a judgment and leave the Plaintiff responsible for bridging the gap between the price recovered by the Defendants through the foreclosure sale and the full value of the loan—a worse outcome for the Plaintiff. Thus, granting the Plaintiff's request would actually harm the Plaintiff and benefit the Defendants.

## CONCLUSION

Finding that the Plaintiff's suit is meritless, the Court hereby **DENIES** the Plaintiff's motion to proceed in forma pauperis. (Doc. 8). The Plaintiff is hereby ordered to pay the filing fee within thirty days of the entry of this order. Failure to pay the filing fee by January 10, 2025, will result in dismissal of this suit.

**IT IS SO ORDERED.**
**DATED:  December 11, 2024**

                                                  *s/ J. Phil Gilbert*
                                                  **J. PHIL GILBERT**
                                                  **DISTRICT JUDGE**